UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

STEVE LAU,

              Plaintiff,

                                    10 CV 4838

       -vs-                            OPINION AND ORDER

LEONARD MEZEI, HAROLD ZOREF,
NORTHERN FUNDING, LLC, and
NORTHERN HEALTHCARE
FUNDING, LLC,

              Defendants,

-------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:

## I.  INTRODUCTION

On June 22, 2010, Steve Lau commenced an action against Harold Zoref, Leonard Mezei,

and Mezei's companies, Northern Funding ("NF") and Northern Healthcare Funding ("NHF").

(Dkt. No. 1.)  The Complaint alleges violations of federal securities laws, fraud, fraudulent

inducement, negligent misrepresentation, conversion, and breach of contract.  On February 7,

2011, Lau moved for partial summary judgment on his breach of contract claim against

Defendants NF and NHF.  (Dkt. No. 22.)

## II.  FACTS[1]

Zoref has worked as Lau's accountant since 2006.  (Compl. ¶¶  6.)  In 2008, Zoref

referred Lau to Mezei, who was seeking investors to provide financing for his companies,

including NF and NHF.  (*Id.* ¶¶ 13-14.)  Lau invested his retirement funds with NF and NHF.

(*Id.* ¶ 23.)

---

[1] Unless otherwise noted, the following facts are undisputed and are taken from the parties' Local Rule 56.1
statements.

On April 7, 2008, Lau loaned NF $150,000 in exchange for a promissory note (the "NF Note"). (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") ¶ 6; Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶ 6.) Pursuant to the NF Note, NF agreed to pay Lau the $150,000 principal plus an annual interest rate of 8.5 percent. (Pl.'s 56.1 ¶ 6; Defs.' 56.1 ¶ 6.) Interest payments were to be paid monthly from May 1, 2008 through April 1, 2009. (Pl.'s 56.1 ¶ 9; Defs.' 56.1 ¶ 9.) Any unpaid principal and accrued interest would be payable by NF to Lau on April 7, 2009. (Pl.'s 56.1 ¶ 10; Defs.' 56.1 ¶ 10.) NF did not pay Lau any of the principal or accrued interest due under the Note on April 7, 2009. (Pl.'s 56.1 ¶ 14; Defs.' 56.1 ¶ 14.)

From April through July of 2008, Lau loaned NHF a total of $330,000. (Pl.'s 56.1 ¶¶ 16-18; Defs.' 56.1 ¶¶ 16-18.) On September 1, 2008, NHF issued a term promissory note (the "NHF Note") to Lau in the amount of $336,973.74 (the amount of Lau's loans to NHF plus accrued interest). (Pl.'s 56.1 ¶¶ 19-20; Defs.' 56.1 ¶¶ 19-20.) Under the terms of the NHF Note, NHF would pay Lau the principal amount of $336,973.74 plus an annual interest rate of 13 percent; pay interest to Lau on the first of every month from September 1, 2008 until the Note expired on September 1, 2011; and pay Lau any unpaid principal on the expiration date. (Pl.'s 56.1 ¶¶ 22-24; Defs.' 56.1 ¶¶ 22-24.) The NHF Note provides that its terms may not be modified or discharged orally. (Pl.'s 56.1 ¶ 25; Defs.' 56.1 ¶ 25.) NHF has not made any interest payments to Lau since June 4, 2010, despite Lau's demands for the amounts due. (Pl.'s 56.1 ¶¶ 28, 32; Defs.' 56.1 ¶¶ 28, 32.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  The moving party must show the absence of a genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).  To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact by showing more than "some metaphysical doubt as to the material facts," and by presenting more than mere "conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, – F.3d – , 10 Civ. 512, 2011 WL 3625105, at *10 (2d Cir. Aug. 18, 2011) (internal citations omitted).

In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, – F.3d –, No. 09 Civ. 4551, 2011 WL 2750916, at *7 (2d Cir. July 18, 2011).  However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis omitted).  "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 2011 WL 2750916, at *7.

## IV.  DISCUSSION

### A.  Applicable Law

Defendants NF and NHF each issued Lau one promissory note.  Both notes explicitly state that they will be governed by and interpreted in accordance with New York law.  (Pl.'s 56.1 ¶¶ 11, 26; Defs.' 56.1 ¶¶ 11, 26.)  A promissory note is "an unconditional written promise,

signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person." *Black's Law Dictionary* (9th ed. 2009). As a written contract for the payment of money, promissory notes are governed by the common law of contracts. *Imaginative Research Associates, Inc. v. Ramirez*, 718 F. Supp. 2d 236, 257 (D. Conn. 2010).

Summary judgment is appropriate in an action on a promissory note "if there is no material question concerning execution and default of the note." *United States v. Galarza*, 2011 WL 256536, at *1 (E.D.N.Y. Jan. 26, 2011). "To establish a prima facie case of default on a promissory note under New York law, [a plaintiff] must provide proof of the valid note and of defendant's failure, despite proper demand, to make payment." *Lehman Bros. Holdings Inc. v. Walji*, 2011 WL 1842838, at *3 (S.D.N.Y. May 11, 2011). *See also Arrowood Indem. Co. v. Gibson & Behman, P.C.*, 2011 WL 1796045, at *2 (S.D.N.Y. April 29, 2011); *Novick v. AXA Network, LLC*, 2009 WL 2753201, at *1 (S.D.N.Y. Aug. 27, 2009).

B. Analysis

*1. The NF Note*

On April 7, 2008, NF issued a promissory note to Lau with a maturity date of April 7, 2009. (Pl.'s 56.1 ¶ 7; Defs.' 56.1 ¶ 7.) Under the Note, NF promised to pay Lau the $150,000 principal plus interest at an annual rate of 8.5 percent. (Pl.'s 56.1 ¶ 8; Defs.' 56.1 ¶ 8.) On April 7, 2009, the Note was due and payable; NF did not pay any of the principal or accrued interest. (Pl.'s 56.1 ¶¶ 14, 15; Defs.' 56.1 ¶¶ 14, 15.)

In *Valley Nat'l Bank v. Oxygen Unlimited, LLC*, 2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010), the court found that a plaintiff could meet its prima facie burden by presenting evidence of execution of the note, and asserting, without dispute from the defendant, that the defendant

failed to pay. *Valley Nat'l*, 2010 WL 5422508 at *3. Likewise, in *Lehman*, the court granted the plaintiff's motion for summary judgment on its breach of contract claim against the defendant for defaulting on a promissory note when it was "undisputed that the Note is valid and that [the defendant] has failed to make payment." *Lehman*, 2011 WL 1842838 at *3. The court held that, because the defendant did not pay the loan back in full on its expiration date, the plaintiff was entitled to summary judgment as a matter of law on its breach of contract claim. *Id.* at *4.

The Court finds that Lau has met his prima facie burden. Lau presented evidence of execution of the Note by submitting a copy of it and an affidavit stating that NF has failed to pay it. (Affidavit of Steve Lau dated Nov. 29, 2010 ("Lau Aff.") ¶ 5.) Furthermore, NF, in its Rule 56.1 statement, does not dispute the valid execution of the Note and admits to default. (Defs.' 56.1 ¶¶ 6, 7, 14, 15.) Given this undisputed evidence of execution of and default on the Note, the Court grants Lau summary judgment against NF for his breach of contract claim.

### 2. The NHF Note

In April 2008, Lau loaned NHF $150,000 in exchange for a promissory note with an annual rate of return of 9.5 percent. (Pl.'s 56.1 ¶ 16; Defs.' 56.1 ¶ 16.) The Note's maturity date was April 11, 2010. (Pl.'s 56.1 ¶ 17; Defs.' 56.1 ¶ 17.) In August 2008, Lau loaned NHF an additional $180,000. (Pl.'s 56.1 ¶ 18; Defs.' 56.1 ¶ 18.) NHF issued a promissory Note to Lau dated September 1, 2008, totaling $336,972.74 (the sum of Lau's original investment of $150,000, second investment of $180,000 and accrued interest of $6,972.72). (Pl.'s 56.1 ¶ 19; Defs.' 56.1 ¶ 19.) The September 1 Note (hereinafter "NHF Note") provides that (1) September 1, 2011 is defined as the "Expiration Date," (2) interest at a rate of 13 percent will be paid on the first day of each month up to the Expiration Date, (3) the unpaid principal is due and payable on

the Expiration Date, and (4) the Note cannot be modified or discharged orally. (Pl.'s 56.1 ¶¶ 21-25; Defs.' 56.1 ¶¶ 21-25.) NHF has not made any interest payments to Lau since June 4, 2010. (Pl.'s 56.1 ¶ 28; Defs.' 56.1 ¶ 28.) At the time this motion was submitted, however, the expiration date on which the unpaid principal is due had not yet occurred. The NHF Note does not provide for acceleration of payment of the principal in the event that interest payments are not paid on time.

Lau argues that he is entitled to summary judgment against NHF on an anticipatory repudiation theory. "Anticipatory repudiation occurs when a party, before the time for performance under a contract, clearly and unequivocally manifests an intention not to fulfill a contractual duty." *Wecare Holdings, LLC v. Bedminster Int'l Ltd.*, 2009 WL 604877, at *6 (W.D.N.Y. March 9, 2009). "To establish anticipatory repudiation under New York law, a plaintiff must identify an 'overt communication of intention not to perform.'" *Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 228 F. Supp. 2d 293, 299 (S.D.N.Y. 2002) (citing *O'Shanter Res., Inc. v. Niagara Mohawk Power Corp.*, 915 F. Supp. 560, 567 (W.D.N.Y. 1996). A *clear manifestation of an intention not to perform*, communicated in advance of the time for performance, is critical to establishing that a party has anticipatorily repudiated its performance. *O'Shanter*, 915 F. Supp. at 567 (emphasis added).

Lau states that, on or about January 28, 2010, Zoref told Lau that NHF would not pay the principal due on the NHF Note on September 1, 2011. (Pl.'s 56.1 ¶ 30; Lau Aff. ¶ 15.) Lau also states that on or about February 11, 2010, Mezei and Zoref, during a telephone conference call, told Lau that NHF would not be able to pay the principal due under the NHF Note on September 1, 2011. (Pl.'s 56.1 ¶ 31; Lau Aff. ¶ 16; Compl. ¶ 59.) In their 56.1 response, the Defendants state they do not have any direct knowledge of a conversation between Lau and Zoref. (Defs.'

56.1 ¶¶ 30, 31; Declaration of Leonard Mezei dated Jan. 3, 2011 ("Mezei Decl.") ¶ 2.)  The

Defendants dispute what Mezei told Lau, but they acknowledge the existence of a conversation

about the NHF Note, wherein Mezei told Lau that the company was "having financial

difficulties" and was "hoping to restructure its debt."  (Mezei Decl. ¶ 2.)

     The critical issue here is whether NHF, through Mezei and Zoref, made a clear,

unequivocal statement of an intent not to pay the NHF Note on its expiration date.  Lau states

that over the course of two conversations, Mezei and Zoref told him that NHF would not pay the

Note on the due date; Mezei, in his declaration, says that he does not recall "specifics of the

conversation" he had with Lau, and he "do[es] not believe [he] told him the note would not be

paid."  (Mezei Decl. ¶ 2.)

     When determining whether a genuine issue has been raised, "a court must resolve all

ambiguities and draw all reasonable inferences against the moving party.  Therefore, not only

must there be no genuine issue as to the evidentiary facts, but there must also be no controversy

regarding the inferences to be drawn from them."  *Donahue v. Windsor Locks Bd. of Fire

Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987) (internal citations omitted).  Here, the parties give

different accounts of what was said during the conversations among Mezei, Zoref, and Lau.

Lau's anticipatory repudiation claim rests on NHF *unequivocally stating* that it will not perform.

Here, although NHF's acknowledged statements that it is "having financial difficulties" and

"hoping to restructure its debt" may have implied it would not pay the Note when it became due,

these statements are not clear, unqualified proclamations of an intent not to pay the Note.  *See

SMF Realty Co. v. Consolini*, 903 F.Supp. 656, 662 (S.D.N.Y. 1995) (denying plaintiff's motion

for summary judgment because there were facts and circumstances that "leave doubt as to

whether [the defendant made] an unequivocal refusal.").

For the Court to decide that Lau's characterization of the conversation is the more believable one, it would have to engage in a credibility determination. Such "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Kaytor* at 545. *See also Floyd v. City of New York*, 2011 WL 3856515, at *18 (S.D.N.Y. Aug. 31, 2011) ("Ultimately, resolution of this issue will turn on a credibility determination, which is beyond the purview of a court deciding a summary judgment motion.").

When there are conflicting versions of events, summary judgment is improper. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (articulating that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). Because there are conflicting accounts as to whether NHF clearly and unequivocally stated an intent not to pay the Note on its expiration date, summary judgment against NHF on the breach of contract claim is denied.

3. Subordinated Rights of Lau

The Defendants argue that because the NHF Note is expressly subject to a subordination agreement, this subordination creates an inherent factual issue as to whether Lau would ever be paid under the Note. (Defs.' Mem. In Opp'n to Partial Summ. J. at 3-4.) Because there are contested issues of material fact that impact whether NHF did repudiate the NHF Note, the Court need not address Defendants' subordination arguments.

## V. CONCLUSION

For the foregoing reasons, Lau's motion for partial summary judgment is GRANTED in part and DENIED in part. Lau's motion for partial summary judgment against Defendant NF as to the breach of contract claim is granted. Lau's motion for partial summary judgment against

Defendant NHF as to the breach of contract claim is denied. Lau should submit a proposed order specifying the total amount due under the NF Note, statutory interest, and costs.

Now that the September 1, 2011 maturity date for the NHF Note has passed, the parties should meet and confer regarding whether summary judgment is appropriate or a trial is needed. If summary judgment is appropriate, the parties shall so notify the Court by October 5, 2011, and file their 56.1 statements by October 10, 2011. If one party seeks summary judgment and the other believes it inappropriate, the proponent of summary judgment shall file its 56.1 statement on October 10, 2011; the 56.1 Counterstatement would due October 12, 2011.

SO ORDERED.

DATED:    New York, New York
          September 29, 2011

_____
KIMBA M. WOOD
United States District Judge