UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVE LAU,

                Plaintiff,

-against-

LEONARD MEZEI, HAROLD ZOREF, NORTHERN FUNDING, L.L.C., and NORTHERN HEALTHCARE FUNDING, L.L.C.,

                Defendants.

No. 10 CV 4838 (KMW)(JCF)

DECLARATION OF STEVE LAU

Steve Lau hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the plaintiff in the above-captioned action. I submit this declaration in opposition to Defendants' motion for summary judgment. I have personal knowledge of the facts set forth herein.

2. I am a solo-practicing attorney and I do not practice in the field of securities law. My specialties are personal injury law and criminal defense.

3. In 2006, my then-wife Amy Hertz and I were searching for an accountant and an investment adviser because were looking to get serious about investing our money because we didn't know anything about investments.

4. Defendant Harold Zoref was referred to us by one of Zoref's clients. During our meeting with Zoref in 2006, he advised us that he could provide us with accounting services and investment advice under one roof.

5. Because Zoref told us he could provide us with both accounting services and investment advice, we thought it was a good deal. We retained Zoref to provide us with

accounting services and investment advice. We told Zoref that we needed advice on investing our retirement funds and other assets, and Zoref told us he would advise us where to invest our money. In order to provide us with investment advice, Zoref requested that we send him a package of information, including an inventory of our assets. Attached hereto as Exhibit A is a copy of an email from my then-wife Amy Hertz to me, dated March 8, 2006; attached hereto as Exhibit B is a copy of an email from my then-wife Amy Hertz to Defendant Zoref, that was carbon copied to me, dated June 21, 2006; attached hereto as Exhibit C is a copy of an email from Defendant Zoref to me dated October 19, 2006.

6. Zoref recommended my then-wife place money into a deferred compensation program. Additionally, in late 2006, Zoref recommended Defendant Northern Funding, L.L.C. ("NF") and Defendant Northern Healthcare Funding, L.L.C. ("NHF") as investments for me and my then wife, and Zoref recommended maturities, denominations of investments, and ways to diversify our funds. My then-wife and I went away on vacation and we told Zoref that we would send him the money to invest when we returned. Attached hereto at Exhibit D is a copy of an email from Defendant Zoref to me, dated November 11, 2006; attached hereto as Exhibit E is a copy of an email from my then-wife Amy Hertz to Defendant Zoref, that was carbon copied to me, dated January 5, 2007.

7. My wife and I decided to divorce in or around September 2007. Zoref continued to act as my accountant and investment advisor. Zoref remained my accountant and investment advisor until 2010, although he did not prepare my taxes for 2009.

8. In January 2008, I asked Zoref for investment advice on investing the proceeds from property that my wife and I were selling as part of our divorce, and Zoref and I set up a call to discuss how to invest those proceeds. Attached hereto as Exhibit F is a copy of an email from

me to Defendant Zoref dated January 5, 2008; attached hereto as Exhibit G is a copy of an email from me to Defendant Zoref dated January 10, 2008.

9. On January 14, 2008, I sent Zoref a document setting forth my thoughts and goals for my financial future so that he could better plan and manage my assets and investments and provide me with appropriate investment advice. Attached hereto as Exhibit H is a copy of an email from me to Defendant Zoref, dated January 14, 2008.

10. After I sent my financials goals and thoughts to Zoref, we had a telephone conversation during which Zoref and I discussed my current assets, my projected income, and how much I might receive from the sale of my house. Based on those numbers, Zoref created a plan and advised me on how much money I should keep liquid, how much money I should keep in my retirement accounts, how to allocate my assets among NF and NHF, and how much money I should invest in stocks. I later sent Zoref a copy of the notes that I took during our discussion. Attached hereto as Exhibit I is a copy of an email from me to Defendant Zoref, dated January 21, 2008; attached hereto as Exhibit J is a copy of a document that I created containing my notes reflecting my discussion with Defendant Zoref in January 2008.

11. In January 2008, Zoref told me that Defendant Leonard Mezei was seeking capital to fund NF and NHF and therefore I could invest in NF and NHF.

12. Additionally, during my conversation with Zoref in January 2008, I told Zoref that I was risk averse and I wanted to invest conservatively, but I was willing to invest in stocks with some risk. Zoref told me that one of his employees could provide me with the stock advice. Exhibit J; Attached hereto as Exhibit K is a copy of an email from Defendant Zoref's employee Stuart Jasphy to me, dated February 19, 2008. However, I decided not to invest in stocks

because I felt that NF and NHF were a better investment option for me because they were represented by Zoref as conservative investments with extremely little or no risk.

14. In February 2008, Zoref directed NF and NHF to provide me with forms to invest my funds, he dictated to NF and NHF the terms of my investments, and instructed that a draft promissory note should be sent to his employee Sherwin Liff for approval. Attached hereto as Exhibit M is a copy of an email from Patrick J. Cullinan to me, dated February 20, 2008; attached hereto as Exhibit N is a copy of an email from Alice Nyburg to Defendant Zoref, that I received as a carbon copy, dated February 21, 2008.

13. Zoref continued to provide me with investment advice in early 2008. Zoref created a plan for me to investment my assets in NF and NHF and to consider placing additional money into the funds that are available as part of my conservative retirement accounts. Attached hereto as Exhibit L is a copy of an email from me to Defendant Zoref, dated February 19, 2008.

15. Between January 2008 and April 2008 when I invested in NF and NHF in April 2008, Zoref induced me to invest in NF and NHF through a series of misstatements to me regarding NF and NHF. Between January 2008 and April 2008 when I invested in NF and NHF, I told Zoref I was risk adverse and Zoref told me that NF and NHF were conservative investments with extremely little or no risk. Additionally, between January 2008 and April 2008 when I invested with NF and NHF, Zoref told me that investments in NF and NHF were reserved for "friends and family" only and that he would not direct friends and family like me into high risk investments. Furthermore, Zoref told me that NF possessed $150 million dollars worth of assets to serve as collateral for my loan and NF and NHF together possessed $270 million dollars in assets as collateral for the loans I was making to them. I would not have invested in NF and NHF had Zoref not made these misstatements to me

16. Attached hereto as Exhibit O are copies of notes I took prior to my investments with NF and NHF reflecting representations Zoref made to me regarding NF and NHF.

17. At no time prior to my investments in NF and NHF, did Zoref mention that Capital Source was a senior lender to NF, the promissory note NF issued to me does not indicate Capital Source is a senior lender to NF, and I would not have invested in NF had I known about the existence of a senior lender to NF. A copy of the promissory note issued to me by NF is attached to my Complaint as Exhibit A.

18. I never received any documents disclosing the risks of investing in NF and NHF from Zoref or anyone else, nor did anyone tell me that NF or NHF was in financial trouble. My understanding is that NF invested in real estate and that the assets of NHF were invested in healthcare receivables. Prior to my investment in NHF, I have never invested in healthcare receivables. Additionally, I am not experienced in evaluating real estate for investment purposes and I am not experienced with investing in healthcare receivables. Zoref told me that he had looked through the books of NF and NHF and based on looking at the books of NF and NHF that NF and NHF were extremely low risk investments. Because Zoref was my investment advisor I placed my trust in him to recommend investments that were appropriate for me.

19. In reliance on Zoref's statements to me regarding NF and NHF, on April 1, 2008, I informed Zoref that I made up my mind to invest my assets in NF and NHF as we discussed because I trusted the advice given to me by Zoref. Attached hereto as Exhibit P is a copy of an email from me to Defendant Zoref dated April 1, 2008; attached hereto as Exhibit Q is a copy of an email from me to Defendant Zoref dated April 7, 2008. As a result, on or about April 7, 2008 I invested $150,000.00 in NF and NF issued me a Term Promissory Note in the amount of

$150,000.00. Additionally, on or about April 7, 2008, I invested $150,000.00 in NHF and NHF issued me a Term Promissory Note in the amount of $150,000.00.

20. After my initial investments in NF and NHF, I continued to seek investment advice from Zoref and I asked for Zoref's advice regarding additional investments in NF and NHF. Based on my discussions with Zoref, I eventually invested an additional $180,000.00 in NHF and Zoref facilitated the issuance of a new promissory note from NHF to me in the amount of $336,973.74 dated September 1, 2008, with a maturity date of September 1, 2011 ("Sept. NHF Note."). A copy of the Sept. NHF Note issued to me by NHF is attached to my Complaint as Exhibit C; attached hereto as Exhibit R is a copy of an email from me to Defendant Zoref dated June 16, 2008; attached hereto as Exhibit S is a copy of an email from me to Defendant Zoref dated July 26, 2008; attached hereto as Exhibit T is a copy of an email from me to Defendant Zoref dated July 30, 2008; attached hereto as Exhibit U is a copy of an email from me to Defendant Zoref dated July 31, 2008; attached hereto as Exhibit V is a copy of an email from me to Defendant Zoref dated August 6, 2008; attached hereto as Exhibit W is a copy of an email from me to Defendant Zoref dated August 6, 2008; attached hereto as Exhibit X is a copy of an email from me to Defendant Zoref dated August 11, 2008; attached hereto as Exhibit Y is a copy of an email from me to Defendant Zoref dated September 1, 2008; attached hereto as Exhibit Z is a copy of an email from me to Defendant Zoref dated September 2, 2008.

21. In the course of investing my funds in NF and NHF, Zoref appeared to be acting on behalf of NF and NHF, and as an agent of NF and NHF, and I relied on the fact that he could speak on their behalf, based on the way Zoref answered questions I directed at NHF, that he or his employee was required to approve promissory notes, and that he was one the who provided me with information regarding my investments in NF and NHF. Attached hereto as Exhibit AA

is a copy of an email from me to Defendant Zoref dated August 19, 2008; attached hereto as Exhibit BB is a copy of an email from Defendant Zoref to Patrick Cullinan, that was carbon copied to me, dated September 7, 2008; attached hereto as Exhibit CC is a copy of an email from Sherwin W. Liff to me, dated September 15, 2008; attached hereto as Exhibit DD is a copy of an email from Sherwin W. Liff to me dated August 5, 2008; attached hereto as Exhibit EE is a copy of an email from Defendant Zoref to me dated August 4, 2008; attached hereto as Exhibit FF is a copy of an email from Defendant Zoref to me dated August 1, 2008.

22. As a result of these interactions, it appeared to me that Zoref was an agent of NF and NHF and I relied on Zoref to give me accurate information regarding NF and NHF.

23. In or around September 18, 2008, I sent an email to Zoref requesting information about NF and NHF given that the government was bailing out certain institutions. As I stated during my deposition, at the time of this email, I was not concerned about my investments in NF and NHF. Instead, there was a lack of information regarding their performance and I wanted information one way or the other. In response to my September 18, 2008 email, Zoref and I spoke and he provided me with reassurances regarding NF and NHF. Attached hereto as Exhibit GG is a copy of an email from me to Defendant Zoref, dated September 18, 2008; attached hereto as Exhibit HH is a copy of an email from me to Defendant Zoref dated September 21, 2008.

24. As of December 15, 2008, I continued to receive investment advice from Zoref and I sent him questions for advice on splitting a retirement fund with my ex-wife. I wanted to obtain Zoref's thoughts on rolling over my retirement accounts and opening an IRA. Additionally, I reiterated to Zoref how I wished to be conservative with my money. Because I was emailing with Zoref, I also asked him how NF and NHF were doing. I was not concerned

about NF and NHF at this time and I do not believe I received any information regarding NF and NHF. Attached hereto as Exhibit II is copy of an email from me to Defendant Zoref dated December 15, 2008.

25. In February 2009, Zoref told me for the first that there would be no payout on the promissory note issued by NF for at least two years, but that it would be paid out. I was not concerned about my investment in NF because Zoref told me I would receive my money, only not on time. Zoref told me that Defendant Mezei would provide a detailed explanation at a later time in the form of a letter regarding NF. The letter I received from Mezei in June 2009 is attached to my Complaint as Exhibit D.

26. On December 16, 2009, Zoref contacted me by email regarding my investments in NF and NHF. I asked Zoref if there was something we needed to talk about and Zoref told me by email "I wanted to bring you up to date on Northern. No action required, checks will continue and the rest is general stuff but too hard to do by e mail and can wait until you come back if that is not too far off." Attached hereto as Exhibit JJ is a copy of an email from Defendant Zoref to me dated December 16, 2009. Zoref told me our discussion could wait until I returned from traveling on January 14, 2010.

27. On January 28, 2010 I had a telephone call with Zoref where he informed me for the first time that Capital Source was a senior lender to NF and that I would not receive any money from my investment in NF because Capital Source would be paid first. Attached hereto as Exhibit KK is a copy of an email from Defendant Zoref to me dated January 28, 2010; attached hereto as Exhibit LL is a copy of notes that I took regarding my telephone call with Defendant Zoref on January 28, 2010.

28. After my telephone call with Zoref on January 28, 2010, I demanded a call with Defendant Mezei, and on February 11, 2010, Mezei confirmed that I would not receive any money from my investment in NF, and Mezei also told me that I would not receive the principal owed to me under the Sept. NHF Note when it came due on September 1, 2011. Attached hereto as Exhibit MM is a copy of an email from Debbie Lambert to me dated February 3, 2010; attached hereto as Exhibit NN is a copy of notes that I took regarding my telephone call with Defendants Zoref and Mezei; attached hereto as Exhibit OO is a copy of an email from Defendant Zoref to me, dated February 16, 2010.

29. Under the Sept. NHF Note, NHF promised to pay to me any unpaid principal on September 1, 2011. To date, I have not received the principal due to me under the Sept. NHF Note. Additionally, under the Sept. NHF Note, NHF promised to pay me interest each month up to September 1, 2011. NHF has not made any interest payments to me since June 4, 2010.

Dated: October 13, 2011

_____
STEVE LAU