UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
STEVE LAU,
              Plaintiff,

                                                                           10 CV 4838 (KMW)
                    -against-                                    OPINION AND ORDER

LEONARD MEZEI, HAROLD ZOREF,
NORTHERN FUNDING, L.L.C., and
NORTHERN HEALTHCARE FUNDING,
L.L.C.,
              Defendants.

-------------------------------------------------------------x
KIMBA M. WOOD, U.S.D.J.:


**I. Introduction**

On June 22, 2010, Plaintiff Steve Lau commenced this action against Harold Zoref, Leonard Mezei, and Mezei's companies, Northern Funding ("NF") and Northern Healthcare Funding ("NHF") (collectively "Defendants"). The Complaint asserts eight claims, including violations of federal securities statutes, various common law tort claims, and breach of contract. (Dkt. No. 1.)

On February 7, 2011, Lau filed a motion for partial summary judgment on his breach of contract claim against NF and NHF. (Dkt. No. 22.) On September 29, 2011, this Court issued an Opinion and Order granting the motion as to NF but denying the motion as to NHF. See Lau v. Mezei, 2011 WL 4501942 (S.D.N.Y. Sept. 29, 2011) (No. 10-CV-4838) (Wood, J.). On October 10, 2011, pursuant to the Opinion and Order, Lau filed a new Rule 56.1 Statement contending that partial summary judgment was now appropriate against NHF. ("Pl.'s 56.1") (Dkt. No. 59.) Defendant NHF filed its 56.1 Statement on October 17, 2011. ("Defs.' 56.1") (Dkt. No. 66.)

1

On September 16, 2011, after both parties filed additional Rule 56.1 Statements ("Combined 56.1") (Dkt. No. 47.), Defendants filed a motion for summary judgment on Lau's remaining claims (Dkt. No. 52.).

For the reasons that follow, the Court *sua sponte* grants Lau summary judgment against NHF as to the breach of contract claim. The Court also grants in part and denies in part Defendants' motion for summary judgment.

## II.  Facts

Plaintiff Lau is a lawyer with considerable experience in the fields of "civil and criminal law, including asbestos/toxic tort defense, personal injury, trade secrets, fraud, and general practice." (Combined 56.1 ¶¶2-4.) At the time of the events in question, Lau's investment experience consisted of a "low risk," "low yield" Vanguard money market fund (id. ¶¶7-10) and purchasing Microsoft common stock that he later sold at a thirty percent loss (id. ¶22).

In 2006, based on a referral from a friend, Lau and his wife hired Defendant Zoref to serve as their accountant. (Compl. ¶6.) Lau contends that he retained Zoref because Zoref represented that he could provide both accounting and investment services. (Combined 56.1 ¶¶148-152.) Zoref denies ever offering investment advice and contends that Lau made his own investment decisions. (Zoref Decl. ¶¶2-8.)

In 2008, after Lau and his wife divorced, Lau sought Zoref's advice regarding potential investments. Lau informed Zoref that he wanted to invest in a conservative manner that would not risk his principal. (Combined 56.1 ¶¶170-171.) Zoref allegedly advised Lau to allocate his investments among various vehicles, in including NF and NHF (Compl. ¶¶ 13-14.), representing to Lau that NF and NHF would pose "extremely little or no risk" of loss, that NF and NHF had large amounts of collateral and assets, and that this opportunity was reserved for Zoref's "friends

and family (id. ¶¶ 18-20). Lau alleges, however, that Zoref knew that NF and NHF had insufficient collateral and that investing in NF and NHF would expose Lau's assets to a high degree of risk. (Id. ¶¶21-22.)

On April 7, 2008, based on Zoref's representations, Lau loaned NF $150,000 in exchange for a promissory note (the "NF Note"). Pursuant to the NF Note, NF agreed to pay Lau the $150,000 principal plus an annual interest rate of 8.5 percent. (Pl.'s 56.1 ¶6; Defs.' 56.1 ¶6.) Although any unpaid principal and accrued interest became payable on April 7, 2009 (Pl.'s 56.1 ¶10; Defs.' 56.1 ¶10), NF failed to pay Lau any of the principal or interest due (Pl.'s 56.1 ¶14; Defs.' 56.1 ¶14). This Court granted Lau's motion for summary judgment on his breach of contract claim against NF on September 29, 2011. See Lau v. Mezei, 2011 WL 4501942.

From April through July of 2008, Lau loaned NHF a total of $330,000. (Pl.'s 56.1 ¶¶16-18; Defs.' 56.1 ¶¶16-18.) On September 1, 2008, NHF issued a term promissory note to Lau in the amount of $336, 973.74 -- the amount of Lau's loans to NHF plus accrued interest (the "NHF Note"). (Pl.'s 56.1 ¶¶19-20; Defs.' 56.1 ¶¶19-20.) Under the terms of the NHF Note, NHF agreed to pay Lau the principal amount of $336,973.74 plus an annual interest rate of 13 percent; pay interest to Lau on the first of every month from September 1, 2008 until the Note expired on September 1, 2011; and pay any unpaid principal on the expiration date. (Pl.'s 56.1 ¶¶22-24; Defs.' 56.1 ¶¶22-24.) Despite Lau's demands, however, NHF has not made any interest payments since June 4, 2010. (Pl.'s 56.1 ¶¶28, 32; Defs.' 56.1 ¶¶28, 32.) This Court previously denied Lau's motion for summary judgment on his breach of contract claim against NHF because Lau filed the motion before the Note's expiration date and the Court could not resolve the "conflicting accounts" of NHF's anticipatory repudiation on summary judgment. See Lau v. Mezei, 2011 WL 4501942, at *3-*4.

In addition to the breach of contract claims, Lau also asserts a variety of claims based on Zoref's alleged misrepresentations. He first alleges that Defendants violated various federal securities statutes. (Compl. ¶¶62-69.) Next, Lau asserts a number of common law causes of action, including fraud, fraudulent inducement, and conversion against all Defendants; negligent misrepresentation against Defendants Mezei and Zoref; and breach of fiduciary duty and professional malpractice against Defendant Zoref. (Compl. ¶¶70-120.) Defendants have moved for summary judgment as to all of these claims.

### III. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). The moving party must show the absence of a genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact by showing more than "some metaphysical doubt as to the material facts," and by presenting more than mere "conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).

In deciding a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of

4

legitimate inferences from the facts are jury functions, not those of a judge." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (emphasis omitted). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Brod, 653 F.3d at 164.

Under certain circumstances, district courts may grant summary judgment *sua sponte*. First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 114, 119 (2d Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)); Kalderon v. Finkelstein, 2010 WL 3359473, at *5 (S.D.N.Y. Aug. 25, 2010) (No. 08-CV-9440) (Sullivan, J.). Where the record indicates that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, "a *sua sponte* grant of summary judgment against that party may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." First Fin. Ins., 193 F.3d at 115 (quotation and citation omitted). "The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." Id.

Although courts are advised to provide notice before granting summary judgment *sua sponte*, the Second Circuit has nonetheless observed that courts may grant summary judgment against the moving party without notice or opportunity to defend as long as the court has determined that the facts were fully developed such that the moving party would suffer no "procedural prejudice." Bridgeway Corp. v. Citibank, 201 F.3d 134, 139 (2d Cir. 2000). A party suffers procedural prejudice if it is surprised by the court's action such that the party is unable to present evidence in support of its position. Id. If, however, the party cannot claim to have been

surprised, or if, "notwithstanding its surprise, the party had no additional evidence to bring, it cannot plausibly argue that it was prejudiced by the lack of notice." Id. at 140.

## IV. Plaintiff's Breach of Contract Claim

The NHF Note states that it shall construed in accordance with New York law. (Pl.'s 56.1 ¶10; Def.'s 56.1 ¶10.) Under New York law, a plaintiff establishes a prima facie case of default on a promissory note by providing "proof of the valid note and of defendant's failure, despite proper demand, to make payment." Lehman Bros. Holdings Inc. v. Walji, 2011 WL 1842838, at *3 (S.D.N.Y. May 11, 2011) (No. 09-CV-1995) (Stein, J.); see also Arrowood Indem. Co. v. Gibson & Behman, P.C., 2011 WL 1796045, at *2 (S.D.N.Y. Apr. 29, 2011) (No. 08-CV-6227) (Francis, M.J.).

This Court finds that Lau has met this burden. NHF issued Lau a promissory note with a maturity date of September 1, 2011. (Pl.'s 56.1 ¶5; Def.'s 56.1 ¶5.) Under the terms of the note, NHF agreed to make monthly interest payments through the maturity date and also agreed to repay any unpaid principal on the maturity date. (Pl.'s 56.1 ¶¶7-8; Def.'s 56.1 ¶¶7-8.) The parties agree, however, that NHF has not made any interest payments since June 4, 2010 and has also failed to repay the principal. (Pl.'s 56.1 ¶¶11-12; Def.'s 56.1 ¶¶11-12.)

Summary judgment is appropriate in an action on a promissory note "if there is no material question concerning execution and default of the note." United States v. Galarza, 2011 WL 256536, at *1 (E.D.N.Y. Jan. 26, 2011) (No. 10–CV–894) (Seybert, J.). A plaintiff meets his burden for summary judgment on a promissory note by presenting evidence of execution of the note, and asserting, without dispute from the defendant, that the defendant failed to pay. Valley Nat'l. Bank v. Oxygen Unlimited, LLC, 2010 WL 5422508, at *3 (S.D.N.Y. 2010)

(Daniels, J.).  When it is "undisputed that the Note is valid and that [the defendant] has failed to make payment," summary judgment is appropriate.  <u>Lehman</u>, 2011 WL 1842838, at *3.

Lau has met this burden by presenting a copy of the executed note and by asserting that NHF has failed to pay it.  (Pl.'s Partial SJ Mem., Ex. C (Dkt. No. 26).)  NHF does not dispute either of these facts.  (Def.'s 56.1 ¶¶3-5, 11-13.)

A *sua sponte* award of summary judgment is appropriate here. All of the evidentiary materials that NHF might submit in response to a motion for summary judgment are before the Court:  NHF submitted a 56.1 Statement pertaining solely to the breach of contract claim for the NHF Note.   (Dkt. No. 66.)  Additionally, NHF had the opportunity to fully respond to Lau's motion for summary judgment when it briefed the issue in its response to Lau's February 7, 2011 filing. (Dkt. No. 27.)  The record illustrates that there is no material dispute of fact as to NHF's failure to pay the note on its maturity date.  Given this undisputed evidence of execution and default, Lau is entitled to summary judgment as a matter of law.  Therefore, the Court grants Lau summary judgment against NHF for the breach of contract claim.

## V.  Defendants' Motion for Summary Judgment

### A)  Federal Securities Law Claims

In his complaint, Lau alleges violations of several federal securities provisions, including § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, § 12(a)(2) of the Securities Act of 1933, § 20(a) of the Securities Exchange Act, and § 15 of the Securities Act.

#### (i)   Rule 10b-5 Claim

It is a violation of Rule 10b-5 for any person "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . . in connection

with the purchase or sale of any security." 17 C.F.R. § 240.10b–5. To sustain a private claim for securities fraud under Rule 10b-5,

> "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

Ashland Inc. v. Morgan Stanley & Co., Inc., 652 F.3d 333, 337 (2d Cir. 2011) (quoting Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148, 157 (2008)).

Defendants claim they are entitled to summary judgment on Lau's Rule 10b-5 claim because Lau failed to meet most of the required elements. This Court disagrees, however, and finds that material disputes of fact exist such that summary judgment is inappropriate.

### (1) Material Misrepresentation

To meet the "material misrepresentation" requirement, a plaintiff must offer sufficient evidence of "a statement or omission that a reasonable investor would have considered significant in making investment decisions." Litwin v. Blackstone Group, L.P., 634 F.3d 706, 716-17 (2d Cir. 2011) (citing Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988)). Materiality is an "inherently fact-specific finding," see Basic, 485 U.S. at 236, and accordingly the Second Circuit has "consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation." Ganino v. Citizens Utilities Co., 228 F.3d 154, 162 (2d Cir. 2000). As a result, "[t]he determination of materiality is a mixed question of law and fact that generally should be presented to a jury." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999) (citations omitted).

The heart of Lau's complaint is that his accountant, Zoref, misrepresented the risk involved in investing in NF and NHF. Lau claims to have sought Zoref's advice on investing in a manner that would protect the principal and yet provide some return. When Lau inquired into

8

whether NF or NHR might be an appropriate investment vehicle, Zoref allegedly stated that the investments posed "extremely little or no risk," that NF and NHF had vastly greater assets than they in fact held, and that investment in NF and NHF was reserved for "friends and family." (Compl. ¶¶ 18-22.)

Defendants argue that these statements are immaterial to a sophisticated investor such as Lau, who should have understood that high-yield investments by their nature involve high risk, and that statements about asset size mean little without a description of liabilities. Lau, however, sharply disputes the allegations regarding his sophistication as an investor. (Pl.'s Opp. SJ Mem. at 1.) Moreover, for these statements to have been material, they need only be "significant" in the investment decision. Litwin, 634 F.3d at 716-17. The evidence Lau offers states that he sought a low-risk transaction, and received assurances from Zoref that NF and NHF fit his request. This Court finds that such evidence raises a genuine dispute regarding the materiality of Zoref's misrepresentations.

### (2) Scienter

"Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud." S.E.C. v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996). A plaintiff establishes scienter for a Rule 10b-5 claim "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Scienter is an issue of fact that should not typically be resolved on summary judgment "unless the plaintiff has failed to present facts that can support an inference of bad faith or an inference that defendants acted with an intent to deceive." Wechsler v. Steinberg, 733 F.2d 1054, 1059 (2d Cir. 1984).

At this stage, the Court concludes that Lau has offered sufficient evidence to support the necessary inference of scienter.  In particular, Lau raises genuine disputes of material fact regarding Zoref's motive and opportunity to commit fraud.  Lau alleges that Zoref, having invested over $1 million of his own funds in NH and NHF, had access to NF and NHF's financial records and to Defendant Mezei, which should have informed Zoref of NF and NHF's financial insecurity.  (Combined 56.1 ¶¶172-173.)  Knowing his own investments could be at risk, Zoref had incentive to secure additional funding for NH and NHF from outside sources, such as Lau.  Lau claims that Zoref obtained his investments by representing that, after examining NF and NHF's records and financial statements, Zoref believed the investments were low risk and considered the companies to have sufficient collateral.  (Combined 56.1 ¶¶188-189.)  At this stage, this evidence is sufficient to present a genuine dispute as to factual matters bearing directly on Defendant Zoref's motive and opportunity to commit fraud.  The Court thus denies Defendants' motion for summary judgment on this ground.

### (3) In Connection With

Defendants next argue that because Lau failed to specify the date of Zoref's various misrepresentations, his evidence of a connection between the misrepresentations and the purchase or sale of a security is insufficient.

As a general matter, "district courts have found that when an alleged misrepresentation concerns the 'value, nature or investment characteristics of the securities at issue,' it satisfies the 'in connection with' requirement."  Louros v. Kreicas, 367 F. Supp. 2d 572, 588 (S.D.N.Y. 2005) (Kaplan, J.) (citations omitted).  In this case, Lau has alleged various misrepresentations relating to the nature and investment characteristics of NF and NHF.  Moreover, the fact that Lau cannot identify the precise date on which a misrepresentation occurred does not defeat his claim.

Lau has repeatedly alleged that Zoref's misrepresentations occurred around January 2008, leading up to Lau's April 2008 investment. (Lau Decl. ¶15; Lau Dep. 405-06.) Strictly requiring Lau to specify a particular date would defeat the Second Circuit's "expansive[ ]construction" of the "in connection with" requirement. See Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 37 (2d Cir. 2005) (quotation marks omitted). Accordingly, summary judgment is not warranted on this ground.

### (4) Reasonable Reliance

"[A] plaintiff's reliance on the defendant's misrepresentation must have been reasonable in order for [a Rule 10b-5] claim to proceed." Ashland, 652 F.3d at 337-38. Factors relevant to this reasonableness assessment include:

> (1) [t]he sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

Id.

Defendants argue at length that Lau could not have reasonably relied on Zoref's misrepresentation, because Lau was a sophisticated investor, and Zoref functioned as an accountant, not an investment advisor. Lau, however, points out that his prior investment experience was extremely limited. (Combined 56.1 ¶¶7-10, 22.) Similarly, although Lau does not dispute that he never compensated Zoref explicitly for his role as an investment advisor, Lau has offered evidence that Zoref guided him in his investment decisions. (Combined 56.1 ¶¶150-51, 154-55, 162, 164, 166-67, 170-71.) These disputes strongly indicate that the reasonableness of Lau's reliance is replete with material disputes of fact.[1]

---

[1] Defendants' reliance on Louros v. Kreicas, 367 F. Supp. 2d at 588, is misplaced. In Louros the court observed that a sophisticated investor with "degrees in economics and business and approximately ten years of

Nor is this a case, as Defendants suggest, where the misrepresentations amount to "mere puffery" that cannot reasonably induce reliance.  See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 205-06 (2d Cir. 2009) (finding representations that the company was "highly disciplined" that it "set the standard for integrity," and had "risk management processes . . . designed to preserve the integrity of the risk management process" inadequate (internal quotation marks omitted)).  The misrepresentations in this case relate to the nature and degree of the risk associated with particular investments, not general promises.  Compare McCoy v. Goldberg, 748 F. Supp. 146, 150 (S.D.N.Y. 1990) (Conner, J.) (financial advisor's assurances "that he would implement a safe and conservative investment program tailored to [the plaintiff's] needs which would provide complete safety of principal and a reasonable rate of return" insufficient to state Section 10(b) claim because they "did not pertain to the value or quality of any specific securities purchased by plaintiff"); Newman v. L.F. Rothschild, Unterberg, Towbin, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) (Sweet, J.) (statements by defendant broker that "I'll make money for you" and that the plaintiffs were going to "make good money on new issues" not actionable)).  Accordingly, summary judgment is denied on this ground.

### (5) Loss Causation

Finally, a plaintiff asserting a Rule 10b-5 claim must also prove "both transaction causation (also known as reliance) and loss causation.  Transaction causation requires only allegations that 'but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction.'  Loss causation, by contrast, is the proximate

---

experience as an investor," "who had "repeatedly certified on applications that he understood the risks of option trading," could not reasonably rely on a statement that an options investment could yield returns "with no risk."  Id. at 591.  This case, however, differs in material ways:  Lau has no such longstanding record of investment experience, and the alleged misrepresentations here stated that the investment involved *low* risk, not *no* risk -- a far more plausible claim.

causal link between the alleged misconduct and the plaintiff's economic harm." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 106-07 (2d Cir. 2007).

"The loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement." Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 96 (2d Cir. 2001). A plaintiff must generally establish that "the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." ATSI, 493 F.3d at 107.

Defendants assert that Lau has failed to establish loss causation because, in fact, the resulting loss in this case arose out of "the financial crisis of 2008, not any fraud." (Defs' SJ Mem. at 21.) Again, however, the Court finds that Lau's allegations that he was misinformed as to the degree of risk in the investment, the level of assets that NF and NHF had on hand, and the presence of a senior lender that NF would pay before Lau, all raise material disputes of fact as to whether his loss was foreseeable and fell within the risk concealed by Zoref's allegedly fraudulent misrepresentations.

### (6) Agency

Although the Court finds that summary judgment is inappropriate as to the Rule 10b-5 claim against Defendant Zoref, the Court grants summary judgment on the Rule 10b-5 claim against the remaining Defendants.

Although Lau alleges that Zoref actually made the misrepresentations, Lau's primary basis for asserting this claim against Defendants Mezei, NH, and NHF, is that these Defendants and Defendant Zoref acted in a principal-agent capacity.[2] To establish an agency relationship,

---

[2] Lau also cursorily notes that NF is primarily liable under Rule 10b-5 because NF omitted from the promissory note the existence of another lender -- Capital Source – with a claim senior to Lau's claim. (Pl.'s Opp. SJ Mem. at 18.) Not only does this argument appear to be raised for the first time in Lau's opposition to summary judgment, but the argument itself lacks merit. Lau fails to demonstrate how the omission of Capital Source made

13

the agent must have either actual or apparent authority to act on the principal's behalf.  An agent receives actual authority "by direct manifestations from the principal to the agent."  Peltz v. SHB Commodities, Inc., 115 F.3d 1082, 1088 (2d Cir. 1997).  Apparent authority is created by "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. . . . In such circumstances, the third party's reasonable reliance upon the appearance of authority binds the principal."  Standard Funding Corp. v. Lewitt, 89 N.Y.2d 546, 551 (1997).

Lau argues that Zoref acted with apparent authority because he solicited investors for NF and NHF, reviewed promissory notes, responded to investors' inquiries, and acted as the "point person for the paperwork and other ministerial duties involves in their investments."  (Pl.'s Opp. SJ Mem. at 18.)  But these allegations do not relate to any conduct of the *principal*.  There is no direct evidence that Mezei made any representations about Zoref or that he controlled Zoref's actions in any way.  Nor is there sufficient evidence to support an inference that Defendants authorized Zoref to act on their behalf.  Accordingly, summary judgment is granted as to Defendants Mezei, NH, and NHF with respect to the Rule 10b-5 claim.

### (ii) Section 12(a)(2) Claim

Section 12(a)(2) of the Securities Act of 1933 creates a private remedy against certain "statutory sellers" that sell securities "using prospectuses or oral communications that contain material misstatements or omissions."  In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010).  The elements of a prima facie claim under § 12(a)(2) are:

> (1) the defendant is a 'statutory seller'; (2) the sale was effectuated 'by means of a prospectus or oral communication'; and (3) the prospectus or oral communication 'include[d] an untrue statement of a material fact or omit[ted] to state a material

---

the NF note "misleading," as required by Rule 10b-5.  See 17 C.F.R. 240.10b-5.  The NF Noted appears to simply be silent on this matter, not misleading.  Accordingly, this Court grants Defendant NF's motion for summary judgment on this ground.

> fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'

Id. (quoting 15 U.S.C. § 77 *l* (a)(2)).  In addition, the Second Circuit has limited §12(a)(2) to only "public offering[s] of securities," expressly excluding "private offerings." Yung v. Lee, 432 F.3d 142, 149 (2d Cir. 2005).

Defendants first contend they are entitled to summary judgment on Lau's § 12(a)(2) claim because Zoref is not a statutory seller.  "An individual is a 'statutory seller' -- and therefore a potential section 12(a)(2) defendant -- if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'"  Morgan Stanley, 592 F.3d at 359 (quoting Pinter v. Dahl, 486 U.S. 622, 642 (1988)).  Although there is no dispute that Zoref himself did not pass title in the security, the Court finds that there remains a dispute of fact as to whether, as Lau alleges, Zoref solicited the purchase while retaining a personal financial motivation in the transaction.  See supra Part (V)(A)(i)(2).

Next, Defendants argue that the transactions in this case resulted from a private (not public) offering.  In determining whether an offering is public, courts often consider: "(1) the number of offerees; (2) the sophistication and experience of the offerees; (3) the nature and kind of information which has been provided; (4) the size of the offering and the precautions taken to prevent the offerees from reselling their securities." Feldman v. Concord Equity Partners, LLC, 2010 WL 1993831, at *3 (S.D.N.Y. May 19, 2010) (No. 08–CV–4409) (Seibel, J.).  The investors in NH and NHF included Zoref's family and friends, but also some institutional investors. (Combined 56.1 ¶¶201-202.)  There is no indication of the investors' sophistication or experience.  Moreover, Lau alleges that he received very limited disclosures and that the

15

transaction involved substantial investments. Together, this evidence precludes a grant of summary judgment on the ground that the offer was private.

Finally, Defendants argue that the § 12(a)(2) claim is time barred under the applicable statute of limitations. See 15 U.S.C. § 77m. The statute provides that any action under § 12(a)(2) must be brought within "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." Id. The Second Circuit has recently explained that the "limitations period begins to run only after 'a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter -- irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.'" City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 173 (2d Cir. 2011) (quoting Merck & Co. v. Reynolds, 130 S. Ct. 1784 (2010)).

Defendants claim that a reasonable investor would have discovered the fraud by at least February 2009, when Zoref informed Lau that NF would not be able to repay Lau for about two years. (Pl.'s 56.1 ¶239.) This date is more than one year prior to Lau's filing of his complaint in June 2010. Lau contends, however, that the February 2009 email did not raise his suspicion that Zoref had misrepresented the nature of his investment in NF and NHF. (Lau Decl. ¶25.) Thus a material factual dispute regarding the implications of the February 2009 email remains and summary judgment is not warranted.

Lau's § 12(a)(2) claim against Defendants Mezei, NF, and NHF, however, again hinges on Lau's previously rejected contention that Zoref acted as an agent. See supra Part (V)(A)(i)(6). Summary judgment is therefore granted as to Lau's § 12(a)(2) claim against Mezei, NF, and NHF and denied as to Zoref.

16

### (iii) Section 20(a) Claim against NF

In order to establish a prima facie case of control person liability under § 20(a) of the Securities and Exchange Act, "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." ATSI, 493 F.3d at 108. As discussed above in the agency context, Lau has not established that NF controlled Zoref. See supra Part (V)(A)(i)(6). The Court thus grants summary judgment on this claim.[3]

### (iv) Section 15 Claim against Mezei, NF, and NHF

This claim is again premised on Lau's contention that Mezei, NF, and NHF exercised control over their agent, Zoref. Having already rejected the agency argument above, supra Part (V)(A)(i)(6), the Court grants Defendants' motion for Summary Judgment on this claim.

### B) Common Law Claims

Defendants also seek summary judgment regarding Lau's common law claims for fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, professional malpractice, and conversion.

### (i) Materiality, Reasonable Reliance, and Causation

Defendants first argue that Lau's claims for fraud, negligent misrepresentation, breach of fiduciary duty, and professional malpractice fail because Lau cannot establish the materiality, reasonable reliance, and causation elements of these claims. Defendants rely on the materiality, reliance, and causation arguments raised against Lau's Rule 10b-5 claim. See supra Parts (V)(A)(i)(1), (4), (6). Having already rejected these arguments, summary judgment on this ground is denied.

---

[3] Because the Court grants summary judgment on Plaintiff's § 20(a) and § 15 claims, I do not address Defendants argument that the Complaint fails to adequately state these claims. See Defs.' SJ Mem. at 10 n.70.

### (ii) The Martin Act

Defendants next argue that Lau's claims for fraud, negligent misrepresentation, breach of fiduciary duty, and professional malpractice are barred by New York's Martin Act.  However, since Defendants filed their motion, the New York Court of Appeals has rejected this very interpretation of the Martin Act.  See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc., 962 N.E.2d 765 (N.Y. 2011) ("[T]he plain text of the Martin Act, while granting the Attorney General investigatory and enforcement powers and prescribing various penalties, does not expressly mention or contemplate the elimination of common-law claims[.]"); see also 904 Tower Apartment LLC v. Mark Hotel LLC, 2012 WL 1075854, at *7 (S.D.N.Y. Mar. 29, 2012) (No. 10-CV-9701) (Stanton, J.).  Accordingly, summary judgment based on the Martin Act is denied.

### (iii) Zoref's Duty as an Investment Advisor

Defendants also argue that Lau's claims for negligent misrepresentation, professional malpractice, and breach of fiduciary duty fail because Zoref never functioned as Lau's "investment advisor."  (Defs.' SJ Mem. at 27.)    But these common law claims do not require that Lau prove Zoref qualifies under a statutory definition of "investment advisor" (Defs.' SJ Mem. at 27), but instead require some sort of "special relationship" between Zoref and Lau.  See, e.g., Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000).  Under New York law, "[a] special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1109 (N.Y. 2011).  In Mandarin Trading, the New York Court of Appeals explained that a "special relationship" between a professional and a client can be

18

inferred based on their level of contact, whether the client solicited advice directly from the professional, and the extent to which the professional knew of the advice offered. Id. The Court of Appeals explained that previous cases had found a special relationship where the "defendant sought to induce plaintiffs to invest in a business venture by directly sending them a memo regarding business projections, meeting with them personally, and sending out correspondence to assure the safety of the investment." Id. (discussing Kimmell v. Schaefer, 675 N.E.2d 450 (1996).

The Court finds that Lau has offered sufficient evidence to preclude Defendants' motion for summary judgment on the ground that Zoref did not owe Lau a duty regarding Zoref's investment representations. Lau alleges that he and Zoref engaged in a professional relationship involving substantial interaction for years. Lau further alleges that he repeatedly asked Zoref for investment advice, making it clear to Zoref that Lau depended on Zoref's knowledge and specialized experience. Lau, trusting Zoref's advice, subsequently acted according to Zoref's suggestions. (Compl. ¶¶15-16, 19, 23.) Zoref's denials of these allegations only make clear that at this stage, material disputes of fact remain. Accordingly, summary judgment on the ground that Zoref owed Lau no duty regarding the offered investment advice is also denied.[4]

## VI) Conclusion

For the foregoing reasons, the Court GRANTS summary judgment to Lau against NHF as to the breach of contract claim. Lau should submit a proposed order specifying the total amount due under the note, statutory interests, and costs.

---

[4] Defendants Mezei, NH, and NHF have not argued that any of Lau's common law claims should be dismissed because Lau failed to demonstrate a principal-agent relationship involving Zoref. Compare supra Part (V)(A)(i)(6). Accordingly, the Court's discussion of Lau's common law claims does not distinguish among Defendants.

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

The parties shall submit a joint scheduling order by August 24, 2012, that sets this case for trial October 22, 2012.

SO ORDERED.

Dated:  New York, New York

August 15, 2012

*[signature]*

Kimba M. Wood
United States District Judge